All right, our third case for today is Lyberger against Snider and we will begin with Mr. Adkins. Thank you, Your Honor. Good morning to the members of the panel and to opposing counsel. I hope the court won't take any sign of disrespect from this. I intend to remain seated for my presentation because with the audio and video devices it will be a much better presentation than if I were to attempt to stand. That's fine. I am not going to go through all of the points that have been raised in our briefs because frankly with the six minutes I have for my initial presentation I would not be able to go through all of them. I want to specifically talk about Andrew Lyberger and the reason I want to talk about Andrew Lyberger is that the dearth of evidence with regards to Andrew in particular makes this a particularly troubling decision by the lower court. He was asked for his license and didn't give it, correct, or asked for identification and didn't give it, correct? That is correct and I think it is clear from the video which has been presented in the supplemental record that that was the only reason that he was arrested. At the point 28 minutes and 19 seconds into the second video in the supplemental record there is an officer I believe based on the deposition testimony that it is actually Officer Snyder although frankly I cannot tell from the video which officer it is but he believed that it was him that actually made the arrest. Can I ask you Mr. Atkins? This did not strike me as an Ibarra kind of situation. These three people are together, they're in the car, they all three follow her, they're all three sticking around. The police talked to her and she, you know, that's the information they're operating on both the 911 call and also talking to her. So they're a group. They're not just random individual people who happen to be on the scene and why isn't that enough to provide at least the reasonable suspicion to ask for the ID and to do a little bit of inquiry into the matter? And I have a two-pronged answer to that, Your Honor. First, with regards to the statements made by Ms. Thompson, Ms. Thompson made it very clear during every statement she made in the recording we have multiple times that she's talking about who took whatever actions. She refers to a singular individual and further, the officer when he comes to speak to Andrew and the other occupants of the vehicle says that it was a singular individual. He does not refer to a group of individuals. He refers to a suspicious person. And then there is an arrest for disorderly conduct and for obstruction of Shane and Robert. I'm going to refer to them by their first name since we have two liberters for clarity. There is an arrest of Shane and Robert and he does not arrest Andrew until Shane has asked that Andrew be given the vehicle and he then asks for identification when he is about to apparently turn over the vehicle and his report backs this up that that was the purpose for asking for identification was that he was going to turn over the vehicle to him. Wasn't it police to ensure that Andrew had a valid driver's license to go off in? And he absolutely has the right to ask whether or not there is identification, whether or not Andrew will show him identification. The issue here is does he have the right to arrest for failing to show identification when he is not trying to investigate a crime? He's looking at whether or not to release a to this individual. If he wanted to say you don't get the car because you can't show me a driver's license, I don't think there would be an issue with that. Okay, but he arrested for the failure to show a driver's license. And that I believe under Illinois law, Illinois law makes very clear and has for a substantial period of time, arguably back to the 1960s, that simply refusing to give that information if there is not a reason to believe the individual has committed a crime is not something the police can arrest for. And with regards to Andrew, the evidence of him committing any crime is that he happened to be seated in a vehicle with another individual who had been accused. And the police, when they arrived on the scene, would have seen clearly Robert with a video camera. They actually spoke with him about it. He pointed out he was going to continue recording. They had a report regarding an individual recording someone. So at that point, they had no reason to believe that Andrew did anything other than be present when this occurred. And mere presence without any additional information is not probable cause and is not even articulable suspicion. Mr. Atkins, does the record reflect why when Andrew is given the option to take the car and drive the car back, he doesn't take the officers up on that offer? In a way, it does. He states to the officer that he has done nothing wrong and he is not going to give that information. Essentially stating, I am going to depend on the rights I have under Illinois law to not give you that. I noticed that I am at right at four minutes and I have that reserved for rebuttal. So I will cease there unless there are further questions. All right. That's fine. You may reserve the rest. So we'll turn, I think, to Ms. Turriello. Yes. Thank you, Your Honor. Jennifer Turriello on behalf of Officer Snyder. May it please the court. I'm going to jump right in. The real bone of contention here, based on the argument today, is about the arrest of Andrew Lieberger, the backseat passenger. And my officer had probable cause to believe, as did all the officers at the scene, including Mr. Victor's clients, that the plaintiffs collectively, collectively, if you will, had engaged in disorderly conduct and trespass. The big folly in the other side's argument is that the probable cause calculus doesn't depend on what the plaintiffs overheard a dispatcher say on the police scanner. It's all the information that was available to the defendant officers when they were at the scene. And probable cause is also viewed objectively, not subjectively. So what do you think, in terms of things that Illinois makes unlawful, what do you think the strongest argument is? Because, you know, we do have to look at this as things appeared to the officers at the time of their action. We can't apply hindsight. And, you know, is it that just driving behind somebody is disorderly conduct? Or is it driving onto a road? You know, there's some dispute about whether there are no trespassing signs visible. Your brief indicated that it was just a given fact, but there's clearly a dispute about that. So I think we have to take that light in the light most favorable to the plaintiffs. So what is the crime, actually? Misdemeanor, traffic offense, anything. What's the crime? The disorderly conduct of the trespass are the two strongest here in this case. You know, the situation confronting our officers, I mean, just looking at the give rise to a reasonable inference that these men were acting as a common unit. Our officers are there at the car. They're seeing Robert telling the other telling Shane specifically, you don't have to answer those questions. You can answer that. Hold up a second. He's directing the conversation. So there's clear dialogue going on between at least two occupants in the car. We also have our officers would have had the ability to hear the police scanner. It would have been reasonable to assume that there is other equipment in that car cell phones, not just a camcorder, but cell phones that would be capable of producing and taking video and or pictures of Miss Thompson breastfeeding her infant child. Yeah, she's out in public breast. I mean, you know, it's a troublesome proposition that if people are just out in the public domain, somebody else with a cell phone video device or a camcorder or anything else they have can't video them. You know what? Why does she have that right? Well, I guess it's more than just that, because there's the following of her home on to your point about the private property and that being a disputed issue of fact, their argument is that it's disputed whether or not it's private property because you don't see any signs in the video footage that they took. But just because you don't see the signs in the video footage doesn't mean signage wasn't there. In fact, Miss Thompson's testimony is their signage both at the front of the trailer park and their signage right there adjacent to her mother in law's property. There was also dialogue in the car between the three gentlemen on the videotape that plaintiffs never wanted you to see. We put it in the supplemental records so that the court could see it. But there's dialogue about that. They acknowledged the nature of the private property. This you were in her. This this this is private. They say that. Um, and and then, you know, beyond that, I mean, so that's really it. You have three men following a woman home in the dark of night, and she's terrified. This isn't, you know, and I would agree with your honor. This isn't your borrow. They weren't there by circumstance or coincidence. They chose to be there. They actually met that evening, and the three of them planned to videotape and interact with police. They were absolutely in it together, and that was a reasonable inference from the information that our officers knew, uh, in order to arrest Andrew alongside Shane and Robert. It wasn't an arrest for failure to provide identification. He was part of it. And based on the dialogue, the officers witnessed between the occupants of the car and based upon the fact that there was clearly equipment in the car capable of video recording and Lisa statements to them, implicating all of the individuals in the Durango probable cause existed for Andrew's arrest as well. I see. I'm nearly out of my time. I'd ask for the court to affirm the summary judgment ruling of the district court in Officer Snyder's favor. Thank you. Thank you. Um, all right, we'll turn to you, Mr Victor. May it please the court. My name is Michael Victor. I represent Sergeant Jamie James and Officer Snyder, the Centralia defendants. And for the same reasons, the court should affirm for those defendants. We adopt and incorporate everything that Miss Toriello just stated for the court as relates to our clients and getting right into it. Your honor. Quick point on reasonable suspicion. It was Officer Snyder's to initially stop. That was a reasonable one. He was outnumbered. It was in the dark. It's reasonable for him to them request assistance from another agency and then Officer Harvard and Officer James that arrive on scene under the elect collective knowledge doctrine. Um, they were justified in not second guessing Officer Snyder, but moving to probable cause. Your honor. In addition to disorderly conduct and trust pad, there's probable cause for several other crimes. Before I mention those around, I want to I want to remind and refresh the court and provide some of the guidance supplied by the Supreme Court as to the probable cause standard. Now, Mr Atkins talks about the nine ones tape, but according to D. C versus Wesby, the court does not engage in a technical dissection of the facts in isolation. Well, we believe me. We live with the Fourth Amendment actually constantly. But, um, here's the question, though. Beyond this dogged insistence on their right not to talk to the police. We don't have to give you our IDs. This wasn't a traffic stop. You didn't pull us over. We weren't driving. Um, and then, of course, your clients come along to assist Officer Snyder. Um, this is right on the edge of of just, um, punishing people for saying things that the police find offensive. You know, they don't like the idea that they're standing on their rights not to turn over an I. D. But they're not really doing anything at the time. The police come except with their car, I guess, off to the side. It's not on the private property anymore. They left the private property. Uh, immediately, I think, when Eric told them to go, or at least that's what the favorable inference would be. How? How do we justify this, um, cooperation? The arrest? Your Honor. At the time, they weren't on the property. But Mr Libra Shane Libra testifies that he knew he was on a private drive, and that was a private drive that he intentionally drove on to after following the plaintiff, who was, more than just three men sitting in a car at a scene. You have them being on a private drive after intentionally following somebody who, as a reasonably credible eyewitness reports to the police that they videotaped her Rex breastfeeding and then followed her home. She also said that she was concerned for safety and tethering some of those facts to additional crimes. Your Honor, under the Illinois accountability statute, if somebody aids in this is this is particularly important for Andrew Library. Somebody age aids in the intent to commit another crime as part of a common enterprise. That person is equally accountable for others. Criminal activity. They engage in a common enterprise here. They set out to film and they set out to the police. Mr Victor, does that does that need to be Look, the police officers were facing a, as so often happens, were facing an uncertain situation. They have this apparently credible complaint for Ms. Thompson that is at least arguable probable cause, reasonable suspicion for, and probable cause for disorderly conduct, and they're entitled to talk to your position need anything much more complicated than that? It does not, Your Honor. And and under that, that brings me to my final point. The officers are entitled to qualified immunity, which is required to be decided at the earliest juncture. Taking the undisputed facts here, the officers based on the recent Supreme Court cases, including the Westby case, which I cited that involved the arrest of 16 party goers. At a minimum here, there was arguable probable cause under the undisputed facts for all the crimes mentioned by Mr Yellow. Additionally, mob action, stalking, the failure to provide a license. And so for those reasons, they're entitled to qualified immunity. Request this court to affirm summary judgment and the district court's ruling. Thank you, Your Honors. Mr Victor, one quick question on Centralia. Does Centralia have a municipal disorderly strike that officer or obstruction of justice ordinance that would be something below what a state obstruction of officer, um, allegation of crime would be? I do not believe so, Your Honor. Thank you. Thank you, Mr Atkins. Anything further? You need to unmute. Sorry. Um, I would just like to address the private property issue, um, in a little bit more depth. Uh, on page 34 of the defendants a police brief, they acknowledge that the signage was not something that was considered by the officers. And in fact, um, the report prepared by the Womack officer, uh, it does not reflect that there was any signage that this was a private drive. Um, there is nothing to show that there was a consideration of that or even an awareness of that by the officers that particular evening. Uh, if we look at what information the officers had, we don't see that the officers knew anything about whether or not this was a private drive. What we have is the statements by Ms Thompson. And as we have in the recording, repeated statements and only statements that it was a single individual. It is difficult to believe that she changed that statement only when she wasn't being recorded to say that it was inconsistent for her to say it, you know, by which I assume that means the primary actor, the actor was a single person. And then at the same time say, but these other two people in the car were providing support, aid, assistance or the like. Only one is an actor, but the other two are supplementary. It would be possible for her to make a statement like that. But that is not the way that it has been presented in the deposition where there was a discussion of what was said when she wasn't being recorded. And I think it would be unreasonable. And also, I believe my clients would be entitled to a, um, a view of this in the light most favorable to them. And so we're not looking at a jury being required to find that she always said that it was a but I think we are entitled to look at this in the light most favorable as what a jury could find. And a jury could find every time she's on record every time she's being recorded, she says it was one person. She doesn't say there were people working together. And so we're not going to believe when they say that she talked about multiple people. We're going to go with what we hear on the recording. And I think that is a matter for a jury to determine not to be decided by summary judgment. I have no further points to make your honor, but I would gladly answer any further questions. I believe we have one. Yeah, Mr. Yellow. A question for you. Um, same question that I asked Mr Victor. Does the city of Womack have a municipal level obstruction ordinance below what would qualify as an Illinois state obstruction violation? Not that I'm aware of your honor, and that's not presented in the record. No, thank you. That's it. All right. I see no further questions, so we will thank all three council and take this case under advisement.